UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

STEPHANIE V. VERHAEGEN,

        Plaintiff,

        v.                                     Case No. 04-C-0195

JO ANN BARNHART,
Commissioner of Social Security,

        Defendant.

---

DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER
AND DIRECTING GRANT OF A WAIVER

      Plaintiff, Stephanie V. Verhaegen, seeks judicial review under 42 U.S.C. § 405(g) of the denial of her request for a waiver of overpayment of Disability Insurance Benefits (DIB) under title II of the Social Security Act.

      Verhaegen began receiving DIB in 1991 following injuries from a car accident. (Tr. at 36.) In October 1997, she returned to work full-time as a reservations agent for Mark Travel. (*Id.*) The Social Security Administration notified Verhaegen in 1999 or 2000 that she had received an overpayment due to her work activity. (Tr. at 40-41.) Verhaegen requested a waiver by filling out a form SSA-632. (Tr. at 51.) The request for waiver was denied and Verhaegen sought a hearing. (*See* Tr. at 19, 30, 64)

      On March 12, 2002, Administrative Law Judge Marsha R. Stroup conducted a hearing during which Verhaegen was represented by counsel. (Tr. at 19, 33.) The issue was whether Verhaegen had received an overpayment of DIB from August 1998 through October 2000 and was entitled to a waiver of repayment. (*See* Tr. at 24.)

At the hearing, Verhaegen testified that in December 1997 she contacted the Administration by telephone about her job at Mark Travel and was told that she could continue to work and receive her benefits during a nine-month trial work period. (Tr. at 38-39.) She testified that twelve months later, in December 1998, she was still working for Mark Travel. (Tr. at 39-40.) In late December 1998, she went into an Administration district office to get a new Social Security card following her marriage. (Tr. at 39-40.) She testified:

> And I asked them, you know, I'm still working, does this – I'm still working at Mark Travel, does this change my benefits? Should they be stopped and they said, no, that I was still eligible to work and collect benefits. But they did not ask me to speak with anybody at the office.

(Tr. at 40.) She stated that she was not asked to submit pay stubs, either. (*Id.*)

Verhaegen stated that not until 1999 did she receive in the mail a form to fill out regarding her work activity. (*Id.*) Verhaegen testified that she filled out the form and returned it. (*Id.*) Although the Administration later said it had no record of her returning the form, Verhaegen had a certified mail receipt proving the paperwork had been received by the Administration. (*Id.* at 43.) A few months later she received the notice about her overpayment. (*Id.*) (An exhibit in the file indicates that the paperwork Verhaegen returned was her form SSA-632 and that all Administration efforts to locate it were unsuccessful. Verhaegen was told to resubmit the form. (Tr. at 236.))

Verhaegen stated that but for being told by a Social Security representative that she was eligible to continue receiving benefits, she would not have kept them. (*Id.* at 44-45.) She testified that at the time of the hearing she was still working full-time at an agency called Cruise and Tour and that her DIB had been terminated. (Tr. at 38.)

2

In a decision of May 31, 2002, ALJ Stroup found that Verhaegen was not without fault in having received the overpayment. (Tr. at 21.) The ALJ stated that "a letter in the file from December 1997" was a significant basis for her conclusion that Verhaegen should have known that the checks she accepted were incorrect. (Tr. at 20-21, 6.) Purportedly the letter explained Verhaegen's trial work period – a period of nine months during which a claimant can test her ability to work while still receiving benefits – and what happened after nine months. (Tr. at 20.) According to the ALJ, "anybody reading this letter would realize that after nine months their checks could stop if they were earning over $500 per month, which she clearly was." (*Id.*)

The ALJ found that the evidence established that Verhaegen had contacted the Administration and advised that she had returned to work as of October 1997. (*Id.*) Also, the ALJ found that Verhaegen had gone to an Administration office in December 1998 to get a new Social Security card when she got married. (*Id.*) The ALJ noted Verhaegen's allegation that during the December 1998 visit she told a Social Security employee she was still working and that the employee said she could work and still keep her benefits. (*Id.*) Thereafter the ALJ found:

> After considering the evidence in this case the undersigned believes that even if everything the claimant says is true she also bears the responsibility to check on the facts and to report her earnings in a timely fashion, neither of which she did. Not only is there evidence in the file that the claimant was clearly told about the provisions and limitations as a trial work period but it is highly improbable that the claimant could have had a number of contacts with the Social Security Administration and not been notified of the true procedures in this case. Therefore, the undersigned Administrative Law Judge finds that the claimant is not without fault in having received an overpayment.

(Tr. at 21.)

Verhaegen requested review (Tr. at 251), and the Appeals Council vacated the ALJ's decision because no letter from December 1997 was in the evidentiary record, and thus the ALJ's decision was not supported by substantial evidence (Tr. at 6). However, the Appeals Council relied on two new exhibits. The first was an Administration letter to Verhaegen dated February 28, 1996, which stated that the Administration had reviewed her claim and found her disability to be continuing. Further, the letter advised that the Administration had found any work Verhaegen had been doing (to that point) did "not show the ability to do substantial gainful work." (Tr. at 263.) The letter added that Verhaegen's claim would be reviewed from time to time and she would be contacted regarding whether any eligibility continued. (*Id.*) A handwritten note at the bottom told Verhaegen that if she worked and earned over $500 per month she had to notify the Administration, and the letter gave her a phone number for doing so. (*Id.*)

The second new exhibit was an Administration letter to Verhaegen dated February 19, 1997, again advising that a review had found her disability to continue and that any work she had been doing (to that point) did not show the ability to do substantial gainful work. (Tr. at 264.) Continuing, the letter explained the nine-month trial work period in detail, and told Verhaegen that she could still receive disability benefits while working during that period. (*Id.*) The letter explained that months in which an employee earned $200 or more counted toward the nine trial work months. (*Id.*) It then added:

> After we count your 9 month trial work months, your right to monthly payments will still continue if you are disabled and your average earnings are not over:
>
> \*     $500 a month beginning in January 1990 . . . .

4

> If your average earnings are more than these amounts, we call your work "substantial" and we will stop your monthly payments.

(Tr. at 265.) Further, the letter told Verhaegen that she had to tell the Administration about any changes that may affect her benefits, including a return to work or a change in pay once working, and warned her that she might have to repay any benefits to which she was not entitled. (*Id.*)

Based on these two new exhibits and the ALJ's credibility assessment, the Appeals Council determined that Verhaegen was at fault in causing the overpayment and thus was not entitled to a waiver:

> [T]he Appeals Council has entered into the record a notice dated February 19, 1997, not December 1997, that contains the information to which the Administrative Law Judge was referring (Exhibit AC-3). A notice dated February 28, 1996 informed the claimant that she had completed her trial work period, but that the work she had been doing did not show that she had the ability to engage in substantial gainful activity. The notice informed her that she must notify the Social Security Administration if she were to work and earn over $500 per month (Exhibit AC-2). The notice of February 19, 1997 repeated the information that the claimant had completed her trial work period, but that the work she had been doing did not show the ability to engage in substantial gainful activity. As pertinent here, that notice also informed the claimant that she would continue to be entitled to benefits IF her average earnings were not over $500 per month; that earnings over that amount are "substantial" and would cause her monthly payments to stop (Exhibit AC-3).
>
> Inasmuch as the overpayment in question was caused by the claimant's performance of substantial gainful activity and occurred from August 1998 through September 2000, well after the claimant had been informed by the notices of February 28, 1996 and February 19, 1997 of the effect of earnings over $500 per month upon her entitlement to benefits, the Appeals Council believes that Exhibits AC-2 and AC-3, together with the Administrative Law Judge's assessment of the credibility of the claimant's contention that she was misinformed on several occasions that she could continue to work at the substantial

>gainful activity level and still receive disability insurance benefits, supports the conclusion that the claimant was not without fault under 20 CFR 404.507(c) because she accepted benefits that she knew, or should have known, were incorrect.

(Tr. at 7.) The Appeals Council held that recovery of $17,978.20 in DIB was not waived. (*Id.*) The decision of the Appeals Council stands as the final decision of the Commissioner. (Tr. at 3.) *See* 20 C.F.R. § 404.981.

Under 42 U.S.C. § 405(g), a district court's review of the final decision of the Commissioner, including a denial of a request for waiver, is limited to determining whether it is supported by "substantial evidence" and is based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Heins v. Shalala*, 22 F.3d 157, 160 (7th Cir. 1994). The Appeals Council's findings of fact, if supported by substantial evidence, are conclusive. *Scheck*, 357 F.3d at 699. "Substantial evidence" is such relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Heins*, 22 F.3d at 160; *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). A district court cannot reweigh evidence or substitute its judgment for that of the Appeals Council. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). If the Appeals Council commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See id.*

Verhaegen proffers a procedural and a substantive argument. Procedurally, she argues that at the least a remand is required because she should be given an opportunity to address the two new exhibits relied on by the Appeals Council. However, she had adequate notice of those exhibits, was given an opportunity to address them, and actually addressed them before the Appeals Council issued its final decision.

The Appeals Council's review is plenary unless it states otherwise. *Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999); *see* 20 C.F.R. § 404.976(a). The Appeals Council

6

may consider new evidence provided it relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. § 404.970(b). "The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." *Id.*; *accord* 20 C.F.R. § 404.976(b). If additional evidence is needed, the Appeals Council may remand to an ALJ or obtain the evidence itself unless it affects the claimant's rights adversely. 20 C.F.R. § 404.976(b).

In a letter to Verhaegen dated November 12, 2002, the Appeals Council informed her that it was granting her request for review of the ALJ's decision *and* was receiving additional evidence. (Tr. at 267.) The letter identified letters of February 1996 and 1997, stated that a copy of the evidence was enclosed and was being sent to her attorney. (*Id.*) The Appeals Council invited Verhaegen to submit additional evidence or a further written statement in response or even to request further consideration by the ALJ. (*Id.* at 268.) Verhaegen's attorney filed a brief in response, discussing the exhibits and Verhaegen's cognitive limitations at the time she would have received them. (*Id.* at 272-81.)

It appears that no further evidence was submitted with the brief. However, the brief stated that the February 1996 and February 1997 notices were "purportedly" sent to Verhaegen (Tr. at 273-74). Further, Verhaegen and her counsel did not request oral argument or a remand to the ALJ to take of further evidence. (*See* Tr. at 281.) Instead, the brief stated that Verhaegen relied on her written arguments. (*Id.*) Thus, Verhaegen had an opportunity to address these exhibits and did so.

On the substantive issue, the Administration must seek repayment from a person to whom it has mistakenly made "overpayments," i.e., payments greater than the

7

correct amount. *See* 42 U.S.C. § 404(a). Verhaegen concedes that she received overpayments of benefits. She admits that the only issue before the court is one of waiver of repayment.

Under 42 U.S.C. § 404(b) and 20 C.F.R. § 404.506, a person may request a waiver of repayment. The Administration may not recover any overpayment made – in other words a waiver is given – to a person "who is without fault if such adjustment or recovery would defeat the purpose of [title II of the Social Security Act] or would be against equity and good conscience." 42 U.S.C. § 404(b); *accord* 20 C.F.R. § 404.506(a). The first step is to determine fault; if the claimant is deemed to be at fault, there is no need to consider whether repayment would defeat the purposes of the Social Security Act or be against equity and good conscience. *See Heins*, 22 F.3d at 163 n.2. Verhaegen bears the burden of establishing that she is entitled to a waiver. *Banuelos v. Apfel*, 165 F.3d 1166, (7th Cir. 1999), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-64 (7th Cir. 1999); *Coulston v. Apfel*, 224 F.3d 897, 900 (8th Cir. 2000).

"Fault" means only that of the overpaid individual. 20 C.F.R. § 404.507. "Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." *Id.* In determining fault, the Commissioner must "take into account" the individual's physical, mental, educational, or linguistic limitations, 42 U.S.C. § 404(b), and consider any other "pertinent circumstances," including age and intelligence, 20 C.F.R. § 404.507. Fault is found where the overpayment resulted from the individual's (a) incorrect statement that she knew or should have known to be incorrect, (b) failure to furnish information that she knew or should have known to be material, or (c) acceptance of a

payment that she knew or could have been expected to know was incorrect. 20 C.F.R. § 507(a)-(c).

However, "[w]here an individual . . . accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, . . . such individual, in accepting such overpayment, will be deemed to be *without fault*." 20 C.F.R. § 404.510a. In such a situation, the regulations direct that recovery of any overpayment will be waived, "since it will be deemed such adjustment or recovery is *against equity and good conscience*." 20 C.F.R. § 404.512(a); *Gladden v. Callahan*, 139 F.3d 1219, 1223 (8th Cir. 1998). Therefore, one who relies on erroneous information from an official source regarding interpretation of title II or related regulations automatically meets both requirements for waiver – she is without fault and recovery would be against equity and good conscience. *Gladden*, 139 F.3d at 1223.

In *Gladden*, for instance, the ALJ at a hearing defined "substantial gainful activity" incorrectly. Gladden then informed the ALJ that he owned a business and truthfully answered the ALJ's questions about that business; the ALJ then moved on to other issues. Thereafter, benefits were awarded. 139 F.3d at 1221. In years following the award of benefits, Gladden failed to report work activity related to his business. That work may have met the regulatory definition of "substantial gainful activity," disqualifying Gladden from benefits, but it did not meet the ALJ's definition. *See id.* at 1221-23. The Eighth Circuit found no fault in Gladden's acceptance of overpayments because Gladden had disclosed the existence of the business to the ALJ before benefits were awarded and had thereafter relied

9

on the ALJ's erroneous definition of substantial gainful activity.  *Id.* at 1223.  Gladden was held entitled to a waiver under § 404.510a and § 404.512.

In the present case, the court first notes that only the information given to Verhaegen in December 1998 supports her § 404.510a argument.  Verhaegen admitted at the hearing before the ALJ that the information she received in her telephone call to the Administration in December 1997 was that she could continue to work and receive benefits during the nine-month trial work period.  (Tr. at 39.)  Her testimony does not support any finding that an official at that time told her she could continue to receive benefits after nine months of trial work.  Further, the information was consistent with, rather than contradictory to, the letter sent to Verhaegen in February 1997, which explained what months counted toward the trial work period.

The only support for Verhaegen's § 404.510a argument is what she was told during her December 1998 visit to the Social Security office.  On this point, though, Verhaegen wins, as the Appeals Council's decision lacks substantial evidence regarding the rejection of her argument.

Verhaegen testified that she asked a Social Security employee whether her work at Mark Travel affected her benefits and whether the benefits should stop.  She testified that she was told "no" and that she could both work and collect benefits; the employee did not inquire further.  (Tr. at 40.)

This evidence is not refuted.  The most the Commissioner can say is that there is no record of Verhaegen's December 1998 visit or conversation with the Social Security employee in her claim file or any other Social Security record.  (*See* Tr. at 62.)  However, the absence of any note in the file does not contradict Verhaegen's sworn testimony.  *See*

10

Case 2:04-cv-00195-CNC    Filed 08/15/05    Page 10 of 14    Document 14

*Coulston v. Apfel*, 224 F.3d 897, (8th Cir. 2000) (Bye, J., concurring) ("[T]he Commissioner introduced no evidence to controvert Coulston's account of events. . . . As a matter of logic, the utter absence of evidence in the record cannot be deemed 'substantial.'"). The Commissioner presents no evidence in the record suggesting that such a conversation would normally be documented. And in light of the Administration's inability to find Verhaegen's SSA-632 form, for which she had a certified mail receipt, the Commissioner's reliance on the absence of written documentation is not persuasive.

Further, nothing impugns Verhaegen's credibility. The Appeals Council incorporated the ALJ's "assessment of the credibility" of Verhaegen into its own decision. Importantly, the ALJ did *not* find Verhaegen to be incredible. Instead, she first determined that "even if everything the claimant says is true," Verhaegen, nevertheless, was responsible for looking further into the issue and reporting her earnings to the Administration. (Tr. at 21.) Although the ALJ then stated that it was "highly improbable that the claimant could have had a number of contacts with the Social Security Administration and not been notified of the true procedures in this case" (*id.*), that statement is pure speculation regarding the December 1998 visit, with no evidence, let alone substantial evidence, that at that time or any time afterward until she received notice of the overpayment Verhaegen was notified of the "true procedures." The record contains no evidence of any letter to Verhaegen, similar to those of February 1996 and February 1997, which was sent to her *after* the Social Security employee told her she could continue to receive DIB and which would have stopped her reliance on the employee's erroneous information.

Thus, no substantial evidence supports any factual finding contrary to Verhaegen's testimony that in December 1998 she notified the Administration of her

11

continued work; asked if payments should stop; and was told by an Administration official source that "no," she could continue to receive her benefits while so working.[1] Nor does any substantial evidence exist for a factual finding contrary to Verhaegen's testimony that she relied on the official source's information in accepting what later turned out to be overpayments.

Verhaegen's reliance on the official source's December 1998 information is all that is necessary to hold that she is entitled to a waiver. Section 404.510a by its terms does not disqualify from a waiver those who may have had prior clues indicating the official source was wrong, or even those whose reliance on the erroneous official source was unreasonable. The regulation instead requires only that the individual have "accept[ed] such overpayment *because of reliance* on erroneous information from an official source." 20 C.F.R. § 404.510a (emphasis added). The question for § 404.510a purposes, by the terms of the regulation itself, is "reliance," not *justifiable* reliance or *reasonable* reliance.

Further, a person relying on an Administration official's erroneous information is deemed to be without fault, notwithstanding 20 C.F.R. § 404.507. The ALJ in her credibility assessment stated that even if Verhaegen was telling the truth about the December 1998 visit she still bore a responsibility to look into the facts. The Appeals Council held that the February 1996 and 1997 letters, together with the ALJ's credibility assessment, supported its finding that Verhaegen was "not without fault under 20 C.F.R. § 404.507(c) because she accepted benefits that she knew, or should have known, were incorrect." (Tr. at 7.) Both the ALJ and the Appeals Council commingled § 404.510a with § 404.507 and thereby committed an error of law as well. Section 404.510a does not deny a waiver to those who "could have

---

[1]The Commissioner does not argue that the employee with whom Verhaegen spoke in December 1998 was not an "official source" within the Administration for purposes of § 404.510a.

been expected to know" (the language from § 404.507(c)) that the official source's information was incorrect. The Commissioner has presented no citation to authority that limits § 404.510a to anything other than plain reliance. The Appeals Council did not even cite § 404.510a, let alone explain how its language could be trumped by or commingled with the language of § 404.507(c).

On the record before this court, no finding could be made other than that in accepting the overpayments Verhaegen relied on what she was told by an official source in December 1998. Further, no discussion of the second step for waiver – the purpose of title II or equity and good conscience, 20 C.F.R. § 404.506 – is necessary. Under 20 C.F.R. § 404.512, recovery must be waived when § 404.510a is met; in such a situation recovery is always against equity and good conscience.

The facts here parallel those in *Gladden*. Verhaegen disclosed her work situation to an Administration employee voluntarily and answered any questions (here none) the employee had. The Administration employee gave her erroneous information, on which she relied in accepting overpayments. Similar to Gladden, Verhaegen is entitled to a waiver under 20 C.F.R. §§ 404.510a, .512.

Therefore,

IT IS ORDERED that the Commissioner's decision is reversed and that the Commissioner must grant Verhaegen a waiver of repayment.

Dated at Milwaukee, Wisconsin, this 15th day of August, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

14